IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JTP RECOVERY SERVICES, INC., d/b/a JTP & ASSOCIATES, INC., <br><br> Plaintiff, <br><br> v. <br><br> HILTI, INC., <br><br> Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT <br><br> Case No. 2:19-cv-00738-JNP <br><br> District Judge Jill N. Parrish |

Defendant Hilti, Inc. ("Hilti") entered into a Preliminary Evaluation and Non-Disclosure Agreement ("Agreement") with plaintiff JTP Recovery Services, Inc. ("JTP") pursuant to which the parties exchanged information for the purpose of determining whether Hilti would retain JTP to perform an audit to assist in reducing JTP's credit card processing expenses. The Agreement stipulated that Hilti would compensate JTP for any savings that Hilti generated through savings opportunities identified by JTP. Although the parties exchanged some information, Hilti did not retain JTP. Thereafter, Hilti independently negotiated a new contract with its payment processor, upgraded its internal software, and changed the way it processed credit cards resulting in merchant savings. Hilti did not compensate JTP for these savings. JTP sued Hilti for breach of contract and breach of the covenant of good faith and fair dealing. Before the court are (1) a motion for summary judgment brought by Hilti on the breach of contract and breach of the implied covenant of good faith and fair dealing claims, and (2) a motion for partial summary judgment brought by JTP on the breach of contract and breach of the covenant of good faith and fair dealing claims.

1

The court GRANTS Hilti's motion for summary judgment and DENIES JTP's motion for partial summary judgment.

**BACKGROUND**

Hilti is a company that manufactures and sells tools. Many of Hilti's customers pay via credit card, which leads to credit card processing fees. There are two types of credit card processing fees: processor level fees and issuer level fees. Businesses pay processor level fees to have a means of accepting credit card transactions. Chase Paymentech ("Chase"), a subsidiary of JPMorgan Chase, serves as Hilti's credit card processor. Chase relays customer transaction information provided by Hilti to credit card issuers such as Visa, Mastercard, Discover, and American Express. Businesses pay issuer level fees in addition to processor level fees. Because more detailed information reduces the chance of fraudulent transactions, the more detailed the information a business provides, the lower the fee the issuer charges.

From 2017 to 2019, Hilti used a special third-party software, Delego, to relay transaction information to Chase. The version of the Delego software used by Hilti could only relay the most basic transaction information, Level 1, to Chase and the issuers. Hilti believed that it could not provide more detailed transaction information and thereby achieve Level 2 and Level 3 issuer savings without significantly upgrading the Delego software and changing the way Delego processed credit cards. But upgrading Delego would require significant IT investments that Hilti preferred to avoid. In early 2017, Hilti began searching for methods to save on credit card processing fees without upgrading Delego.

JTP, now Verisave, is an independent audit firm that identifies opportunities for businesses to save money by reducing credit card processing and merchant account related fees. In addition to identification, JTP also works with its clients to implement these savings opportunities. In April

2

2017, JTP owner, Jeremy Layton, hosted a free webinar entitled "How to Reduce Your Credit Card Processing Fees without Switching Processors" to advertise to potential clients. Mr. Layton informed attendees that they might be able to reduce processing fees simply by asking for a discount from their credit card processors. Hilti employee Sarah Kester attended the webinar. After the webinar, Sherwin Merill, a JTP sales representative, connected with Ms. Kester to discuss a potential JTP-Hilti relationship. Tasha Bury, a member of Hilti's finance team, took over the project from Ms. Kester.

On May 18, 2017, Hilti and JTP entered into the Preliminary Evaluation and Non-Disclosure Agreement, which is the Agreement in dispute. Paragraph 14 of the Agreement provided that Hilti "agrees that should it elect to pursue the savings opportunities identified by [JTP], it will negotiate with [JTP] in good faith to pursue and implement the savings. [Hilti] acknowledges that [JTP's] fee is fifty percent of the monthly savings identified and implemented, for a period of twenty four months."

On June 19, 2017, Hilti employee Brittani Zakharchenko emailed Chase inquiring about opportunities to reduce credit card fees. In her email, Ms. Zakharchenko informed Chase that Hilti was considering JTP as a potential solution for lowering fees. But internal Hilti employee emails dated the next day expressed concerns that JTP's solution was "too good to be true." (Ex. 43 to Hilti 30(b)(6) Dep. 1, ECF No. 52-2.)

On September 5, 2017, Ms. Bury invited JTP employees to Hilti's Oklahoma office. The JTP employees discussed the savings that could be obtained if Hilti retained JTP's services. But the JTP employees refused to disclose any details about the savings and how they would be implemented. At this point, JTP had not provided Hilti with enough detail to recreate JTP's proposed savings opportunities. On September 15, 2017, Mr. Layton sent Ms. Bury an email listing

3

by category the monthly savings JTP could help Hilti achieve. The email splits the savings into US savings and Canadian savings. Under the US savings category, JTP estimates that Hilti could achieve $9,500 in monthly Processor Savings, $30,000 in monthly Level 2 savings, and $80,000 in monthly Level 3 savings. At the end of the email, Mr. Layton stated that implementing the listed savings would not require any changes to Delego or any changes to the way Hilti processed credit cards. In addition, they would require "almost zero involvement from the Hilti IT Department." (Ex. F 2, ECF No. 51-6.)

In early 2018, as a matter of course, Hilti sent out a Request for Proposal to various banks, including Wells Fargo, Chase, and Citi, for its commercial credit services. In November 2018, Hilti entered into a new agreement with Chase that reduced the processor rates from 0.096% per transaction to 0.04% per transaction. JTP alleges that Hilti breached the agreement by obtaining processor level savings without compensating JTP. For damages based on Hilti's processor level savings, JTP seeks $13,293 per month from January 1, 2020, to June 30, 2021.

Hilti subsequently decided to upgrade its Delego system, a project that was completed in June 2019. As a result of the Delego upgrade, Hilti obtained Level 2 savings of between $12,000 and $26,024 per month. JTP acknowledges that Hilti achieved the Level 2 savings through a software upgrade. JTP seeks compensation for these savings.

In late 2020, Hilti started obtaining Level 3 savings of $52,999 per month. Hilti asserts that the Level 3 savings resulted from upgrading the Delego software and changing the way Delego processed credit cards. JTP alleges that Hilti has not produced documents explaining how the Level 3 savings were obtained. JTP seeks compensation for damages based on Hilti's Level 3 savings.

**LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted).

**ANALYSIS**

I.  **JTP'S AND HILTI'S CROSS MOTIONS FOR SUMMARY JUDGMENT FOR BREACH OF CONTRACT**

Both Hilti and JTP move for summary judgment on JTP's breach of contract claim. JTP contends that it is entitled to summary judgment because Hilti breached the Agreement by refusing to compensate JTP after implementing savings strategies falling within the categories listed by JTP.

Hilti contends that it is entitled to summary judgment because it did not breach the Agreement. Hilti alleges that JTP did not actually identify any savings opportunities and/or strategies that could be implemented by Hilti. Hilti also claims that any savings it generated are not the savings contemplated by JTP and are therefore outside the scope of the Agreement. In the alternative, Hilti contends that any compensation JTP is entitled to is limited to the twenty-four-month term of the Agreement, that is from May 18, 2017 to May 18, 2019. In contrast, JTP

contends that that the twenty-four-month term should be measured starting from the date of implementation of a savings strategy and not from the date the Agreement was executed.

The operative provision for purposes of JTP's claim for breach of contract is paragraph 14 of the Agreement. It provides:

> <u>Obligation to Negotiate in Good Faith</u>. Neither Company nor Client is obligated to pursue the savings opportunities identified by Company, or implement strategies recommended by company, as a result of its review of the information contemplated herein. Client acknowledges that, but for Company's expertise and knowledge, identification of savings opportunities and/or strategies for implementation would not have been brought to Client's attention. Client agrees that it will not pursue these savings opportunities, whether on Client's own initiative or with the assistance of a third party such as Client's current merchant processor, without compensating Company. Client agrees that should it elect to pursue the savings opportunities identified by Company, it will negotiate with Company in good faith to pursue and implement the savings. Client acknowledges that company's fee is fifty percent of the monthly savings identified and implemented, for a period of twenty four months. The savings are determined by subtracting the amount Client actually paid from the amount Client would have paid, prior to implementing the savings strategies.

JTP and Hilti both maintain that the contract is unambiguous, and the issue of breach can be wholly resolved using the contract's plain language. But JTP and Hilti offer competing interpretations of the phrase "savings opportunities identified by JTP." Under the most natural interpretation of the phrase that harmonizes the Agreement as a whole, the court determines that Hilti did not breach the Agreement.

Under Utah law, courts first look to the plain language in the four corners of the agreement to determine meaning and intent.[1] *Brady v. Park*, 445 P.3d 395, 407 (Utah 2019). So long as "the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 40 P.3d 599, 605 (Utah 2002). When interpreting a contract, courts "look for a reading that harmonizes the provisions and avoids rendering any provision meaningless." *Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 210 P.3d 263, 269 (Utah 2009). In cases "[w]here parties to a contract dispute propose competing interpretations of a contractual term or provision, [courts] must determine whether the contract as a whole unambiguously supports one interpretation over the other." *Park*, 445 P.3d at 407.

  A. *Savings Opportunities Identified by JTP*

JTP claims that Hilti breached the Agreement by implementing three savings strategies identified by JTP in a September 15 email from JTP owner, Jeremy Layton, to Hilti employee, Tasha Bury. The three savings opportunities are (1) Processor Savings, (2) Level 2 Implementation Strategies, and (3) Level 3 Implementation Strategies. According to JTP, these three categories constitute *savings opportunities identified* by JTP. The September 15 email states in relevant part:

> Because [JTP] and Hilti have an NDA in place that protects the information shared back and forth, we are comfortable providing our confidential details of the savings with the expectation that they will be implemented by working together (we don't typically share these details until after a working agreement is signed).

---

[1] JTP argues that paragraph 11 of the contract serves as an integration clause preventing Hilti from introducing extrinsic evidence regarding the savings opportunities it achieved. The court disagrees with this characterization. Hilti is introducing evidence of its conduct to show that it did not breach the contract, not extrinsic evidence concerning interpretation of the contract language.

> Below is the breakdown of the Monthly Savings that has [sic] been identified:
>
> Hilti –US
> - $8,500 – Fixing the Visa/MC Downgrades
> - $9,500 – Processor Savings
> - $80,000 – Level 3 Implementation Strategies
> - $30,000 – Level 2 Implementation Strategies

(Ex. F 2, ECF No. 51-6.)

JTP does not contest that this email with the categories listed is the most detailed description of the savings opportunities identified by JTP. In fact, JTP characterizes Hilti's attempts to solicit more clarification on the opportunities as "pumping" JTP for information. (Pl.'s Reply at 15, ECF No. 61.) JTP argues that each of these three categories constitute "savings opportunities" identified by JTP pursuant to the Agreement.

The court disagrees with JTP's claim that listing the categories "Processor Savings," "Level 2 Implementation Strategies," and "Level 3 Implementation Strategies," without more, constitutes identification of savings opportunities.

"Parties' intentions are determined from the plain meaning of the contractual language." *Central Fla. Invs. Inc.*, 40 P.3d at 599. Utah courts consult dictionaries to determine plain meaning. *See Willow Creek Assoc's of Grantsville, LLC v. Hy Barr Inc.*, 501 P.3d 1179, 1186 (Utah 2021) (consulting the Oxford English Dictionary online to determine the meaning of "arise" in a contract). The plain meaning of the word "opportunity" is an "occasion or situation that makes it possible to do something that you want to do or have to do, or the possibility of doing something." *Opportunity*, Cambridge Dictionary https://dictionary.cambridge.org/us/dictionary/english/opportunity (last visited Sept. 21, 2022). The plain meaning of the word "identify" is "[t]o prove the identity of (a person or thing) . . . [or] [t]o specify (certain goods) as the object of a contract . . . .") *Identify*, Black's Law Dictionary (11th

8

ed. 2019). Identification of an opportunity requires more than stating that an opportunity exists; it requires proof or specification of that opportunity. Thus, in order to "identify savings opportunities," JTP must have communicated to Hilti at least some indication of the means for achieving the savings opportunities.

JTP disagrees, focusing on the fact that the Agreement refers to both savings "opportunities" and "strategies." It argues the term "strategies" refers to "detailed plan[s] for achieving success" or "a way of doing something or dealing with something." *Strategy, Cambridge Dictionary* https://dictionary.cambridge.org/us/dictionary/english/strategy (last visited Sept. 21, 2022). And because the Agreement must be interpreted to give each term meaning, JTP reasons that identifying a savings "opportunity" does not require identification of the means for achieving the savings.

The court partially agrees. To identify a savings "opportunity," JTP would not be required to provide a detailed plan for achieving success. But, on the other hand, the description of a savings "opportunity" cannot be so amorphous and unspecific as to provide no information as to how the claimed savings are possible. For example, indicating that a client could achieve savings simply by spending less on credit card processing fees is so general that it would not constitute the identification of a savings "opportunity" giving rise to liability. Moreover, the fact that both terms are used in the Agreement does not render them mutually exclusive. In practice, the terms savings "opportunity" and savings "strategy" fall on a continuum where identification of a savings "opportunity" generally requires less specific information than identification of a savings "strategy" and where there is at least some overlap in the middle. But this interpretive analysis does not resolve the question of whether JTP's listing of savings by category contained in the

9

September 15 email constituted sufficient identification of savings "opportunities" to support JTP's claim for breach.

Fortunately, the court is not required to articulate the precise level of detail required to identify a savings "opportunity" as opposed to a "strategy" because the undisputed facts establish that any savings achieved by Hilti did not fall within the savings opportunities identified by JTP in its September 15 email. The court first addresses the Processor level savings achieved by Hilti and then addresses the Level 2/Level 3 savings.

  B.  *Factual Application*

    1)  Processor Level Savings

JTP and Hilti agree that receiving more favorable terms from Chase was the only processor level savings Hilti achieved. But the possibility of negotiating a better processor rate is a technique that JTP discussed in its free 2017 webinar and JTP owner Jeremy Layton testified during his deposition that techniques discussed during the webinar were generally considered not to constitute opportunities offered once the Agreement was signed. Indeed, Layton specifically acknowledged that contacting a credit processor and asking for a discount is not among the opportunities covered by the Agreement.

Despite this testimony, JTP argues that savings achieved by negotiating with Chase are covered by the Processor Level Savings opportunity. JTP interprets paragraph 14, which states, "[Hilti] acknowledges that, but for [JTP's] expertise and knowledge, identification of savings opportunities and/or strategies for implementation would not have been brought to [Hilti's] attention" along with "[Hilti] agrees that it will not pursue these savings opportunities, whether on [Hilti's] own initiative or with the assistance of a third party such as [Hilti's] current merchant

processor, without compensating [JTP]" to mean that Hilti must compensate JTP for negotiating a discount from Chase.

The court is not persuaded. The only reasonable construction of the "expertise and knowledge" term is that it applies to "expertise and knowledge" JTP provides pursuant to the Agreement. The Agreement recitals state that its purpose is to define the parties' rights and obligations over sensitive information that they would like to share. *See* Ex. B. 2, ECF. No. 51-2 ("[T]he Parties *desire* to exchange information . . . .") (emphasis added). The information to be shared is prospective. Thus, paragraph 14 encompasses only knowledge that Hilti learned with respect to merchant savings *after* the Agreement was executed.[2]

In sum, Hilti learned that it could attempt to negotiate lower rates from its payment processor prior to entering the Agreement. JTP provided potential customers with this technique during the April 2017 webinar and the employee who hosted the webinar testified that requesting a discount is not among the savings opportunities covered by the Agreement. There is nothing in the Agreement requiring that Hilti compensate JTP for implementing an idea that JTP shared with Hilti prior to execution of the Agreement. The court therefore concludes that Hilti did not breach the contract by requesting a discount from Chase.

  2)   Level 2/Level 3 Savings

Level 2 savings can be achieved by providing issuers with information such as customer identification codes and the amount the customer pays in taxes. Level 3 savings can be achieved by providing even more information such as the customer's invoice number, item number, and the

---

[2] In fact there would be a failure of consideration for any agreement by Hilti not to use information obtained prior to execution of the Agreement.

shipping and destination postal codes. Hilti achieved Level 2 and Level 3 savings through significant involvement of its IT Department by upgrading its Delego software and changing the way Delego processed credit cards. JTP argues that these savings fit within the scope of the savings opportunities identified in the September 15, 2017 email. But the September 15 email explicitly excludes savings achieved through these means. The email states:

> Please note the following regarding the implementation of the savings:
>
> - Nothing will change with Delego
> - Credit cards will be processed the exact same way they are now
> - There will be almost zero involvement from the Hilti IT Department
> - A majority of the savings will be implemented in 6-8 weeks (or less)

(Ex. F 2, ECF No. 51-6.)

And in JTP's earlier September 8, 2017 email, JTP's Jeremy Layton expressly and repeatedly acknowledges that the opportunities identified by JTP do not require changes to Delego or significant IT upgrades. He states:

> [JTP] understands that the Delego software is an essential piece to processing credit card payments for Hilti and that it has to remain in place. As such, we presented two options to achieve the $120,000 monthly savings [. . .] some of the details for each option are listed below:
>
> Option 1
> - Keep Hilti with Chase Paymentech
> - Minimal Hilti IT involvement
> - [JTP] will work with Delego and Paymentech to implement the savings
>
> Option 2
> - Switch Hilti to a new processor
> - Minimal Hilti IT involvement

12

> - [JTP] will work with Delego and the new processor to implement the savings
>
> After discussing both options over the past few days, we are *100% confident* that option 2 will achieve the savings while *keeping Delego in place* with almost *zero involvement from the Hilti IT Department.*

(Ex. 3 4, ECF No. 52-4.)

As further evidence that the software upgrades do not fall within the savings opportunities identified by JTP, Hilti notes that the software upgrades led to only a fraction of the Level 2 and Level 3 savings JTP initially projected. Standing alone, the fact that there was a discrepancy between the realized Level 2 and Level 3 savings and JTP's initial estimates does not demonstrate that Hilti did not implement JTP's savings strategy or opportunity. However, when combined with the understanding that JTP's means of achieving the potential savings would not require Hilti to upgrade Delego, the discrepancy in the savings levels lends additional support to the conclusion that the savings that Hilti generated from upgrading Delego and changing how cards were processed were not achieved through implementation of any savings opportunity identified by JTP.

In summary, the IT investments and the Delego upgrades implemented by Hilti that eventually led to Level 2 and Level 3 savings were not covered by the Level 2 and Level 3 savings opportunities identified by JTP. Rather, the means by which Hilti achieved these savings were explicitly excluded from the savings opportunities identified by JTP. Thus, the court finds that Hilti did not breach the contract by achieving Level 2 and Level 3 savings. Therefore, Hilti is entitled to summary judgment in its favor on JTP's claim for breach of contract.[3]

---

[3] Because the court concludes that there was no breach, it need not address the parties' arguments regarding the term of the agreement.

## II. JTP'S AND HILTI'S MOTION FOR SUMMARY JUDGMENT FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

"Under the covenant of good faith and fair dealing, both parties to a contract impliedly promise not to intentionally do anything to injure the other party's right to receive the benefits of the contract." *Oman v. Davis Sch. Dist.*, 194 P.3d 956, 968 (Utah 2008) (citation omitted). The "core function" of the covenant of good faith and fair dealing is to prevent "another's opportunistic interference with the contract's fulfillment." *Young Living Essential Oils, LC v. Marin*, 266 P.3d 814, 817 (Utah 2011). This core function "protects commercial reliance interests" by implying terms "that the parties surely would have agreed to if they had foreseen and addressed the circumstance giving rise to their dispute." *Id.* at 816–17. But the covenant of good faith and fair dealing should serve a limited role because judicial misuse of this legal principle "threatens 'commercial certainty and breed[s] costly litigation.'" *Id.* at 816 (alteration in original) (citation omitted).

JTP argues that it is entitled to summary judgment on its claim for breach of the implied covenant of good faith and fair dealing. It asserts that Hilti breached the implied covenant by requesting more specific information regarding the savings strategies from JTP while simultaneously requesting a savings discount from Chase Paymentech and informing Chase Paymentech that Hilti was considering JTP's savings strategies. From this premise, JTP argues that it has established its right to prevail on its good faith and fair dealing claim as a matter of law.

In contrast, Hilti argues that the court should grant summary judgment on JTP's implied covenant of good faith and fair dealing claim because it is duplicative of the breach of contract claim. The court agrees with Hilti. "[T]he covenant of good faith and fair dealing is not an alternative method for enforcing the written provisions of a contract." *First Guar. Bank v. Republic*

14

*Bank, Inc.*, No. 1:16-cv-00150-JNP-CMR, 2019 WL 4736916, at *11 (D. Utah Sept. 27, 2019). Instead, this legal principle implies terms not found in the contract but that the parties would have agreed to if they had thought to do so. *Young Living*, 266 P.3d at 817. Here, JTP does not identify any implied terms that it seeks to enforce. According to JTP, Hilti frustrated the purpose of the agreement "by implementing the savings opportunities identified by JTP without compensating JTP." (Pl.'s Mot. Partial Summ. J. 14, ECF No. 52.) JTP argues that since Hilti intentionally breached the contract, JTP is entitled to recover under the implied covenant of good faith and fair dealing. (*Id.* at 15.) But JTP is not seeking enforcement of an implied term; JTP is using the implied breach theory to enforce the actual terms of the agreement. But this is not a valid theory of a breach of the implied covenant of good faith and fair dealing. Accordingly, the court grants summary judgment in Hilti's favor and finds that Hilti did not breach the implied covenant of good faith and fair dealing.

## CONCLUSION AND ORDER

The court orders as follows:

(1) The court GRANTS Hilti's motion for summary judgment and DENIES JTP's partial motion for summary judgment on JTP's breach of contract claim.

(2) The court GRANTS Hilti's motion for summary judgment and DENIES JTP's motion for partial summary judgment on JTP's breach of the implied covenant of good faith and fair dealing claim.

DATED September 26, 2022.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge